244 N.J. Super. 304 (1990)
582 A.2d 809
CITY CHECK CASHING, INC., A NEW JERSEY CORPORATION, AND EDWIN L. SIEGEL, SOLE STOCKHOLDER OF CITY CHECK CASHING, INC., PLAINTIFFS-APPELLANTS,
v.
THE NATIONAL STATE BANK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1990.
Decided July 13, 1990.
*305 Before Judges J.H. COLEMAN, BRODY and SKILLMAN.
Diane P. Sullivan argued the cause for appellants (Hannoch Weisman, attorneys; William W. Robertson, of counsel; Diane P. Sullivan, on the brief).
John D. North argued the cause for respondent (MacKenzie, Welt, Duane, Maher & North, attorneys; John D. North, of counsel; Paul F. Campano, on the brief).
Jamieson, Moore, Peskin & Spicer, attorneys for amicus curiae New Jersey Bankers Association (Dennis R. Casale, of counsel and on the brief; Guy F. Clerici, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Plaintiff City Check Cashing, Inc. (plaintiff) opened a demand deposit account with defendant in 1985, a year in which plaintiff cashed a total of $19,000,000 worth of checks for its customers. *306 Plaintiff deposited its customers' checks in the account, and withdrew from the account the funds it needed to cash them. Defendant's Central Money Processing Unit, which serviced customers who needed a constant and large supply of cash for their businesses, kept plaintiff supplied with ready cash from the account. Defendant abruptly stopped supplying plaintiff with cash on April 30, 1988, a year in which plaintiff cashed $108,000,000 worth of checks.
We hold that though defendant wrongfully froze the account, in the circumstances of this case plaintiff was not a consumer and therefore was not entitled to recover under the Consumer Fraud Act.
Although plaintiff's account with defendant originally had the appearance of a simple demand deposit account, it gradually expanded to include what might be described as an informal unlimited line of credit. This change developed because as plaintiff's business grew, defendant permitted it to withdraw increasingly large sums of cash against deposits of checks that had not yet cleared. As these "overdrafts" increased, defendant became concerned that they posed a risk that was not adequately secured and for which it was not being adequately compensated.
The immediate reason for freezing plaintiff's account in April 1988 was defendant's discovery that the New Jersey Department of Banking was conducting an investigation into the affairs of plaintiff Edwin Siegel, plaintiff's principal, which jeopardized plaintiff's license to do business. However, a second reason was defendant's mounting concern over whether to continue what began as a demand deposit account but had grown into a risky, ill-defined arrangement.
Plaintiff immediately brought the present action in which it sought temporary restraints, pendente lite relief and damages. To relieve the crisis, the parties agreed that plaintiff would deposit $100,000 with defendant as security and in return defendant would unfreeze the account "on the understanding *307 that the parties will meet to discuss a broader resolution within the next seven days."
Negotiations between the parties continued until February 1989, when defendant's attorney wrote plaintiff's attorney that defendant had decided to terminate any further business relationship with plaintiff because of the parties' inability to agree upon "protection, comfort and security necessary for the Bank...." Plaintiff, however, took the position that the negotiations had produced an oral contract.
Two months later, in April 1989, plaintiff filed an amended complaint in which it additionally sought pendente lite relief prohibiting defendant from closing the account and a declaration that as a result of their negotiations and prior dealings the parties had an oral contract that defendant had broken. The amended complaint described the parties' negotiations but did not specify the terms of the alleged oral contract. The underlying issue thus presented was whether the parties had an agreement, express or implied, that could not be terminated except for reasonable cause or whether defendant was free to close the account at any time subject only to giving plaintiff reasonable notice. Defendant consented to an order restraining it from closing the account until the issue was adjudicated.
The following month plaintiff moved to file a second amended complaint that contained an additional count charging that defendant had violated the Consumer Fraud Act (Act), N.J.S.A. 56:8-1 et seq. The violations alleged were general and all appear to be variations of a claim that defendant wrongfully closed plaintiff's account in April 1988. Judge Wefing denied the motion, holding in part that plaintiff was not a consumer protected by the Act.
Shortly thereafter, Judge Wefing granted defendant's motion for partial summary judgment. She ruled that there was no evidence that the parties' negotiations had produced a contract.
A jury resolved the remaining issues. In answer to special interrogatories, it found that defendant's "refusal to deliver *308 cash to City Check on April 30, 1988 [was a] breach [of] a contract between the parties" and also a "breach [of] the Bank's obligations to act fairly and in good faith towards City." It also found, however, that defendant's actions in placing a "limitation of overdrafts" that led to its February 1989 notice that it would close the account was not a breach of contract or a breach of defendant's obligation to act fairly and in good faith towards plaintiff. The jury found that 90 days was the "period of time [that] would be reasonable notice to City Checking that its relationship with the Bank was terminating." Finally, it awarded plaintiff $20,000 damages for the abrupt freeze that defendant placed on the account in April 1988.
In sum, the jury found that the parties had a "contract" whereby they would continue any on-going course of dealing subject to defendant's right to terminate the arrangement on 90-days notice.
We are satisfied that Judge Wefing correctly concluded that plaintiff submitted no credible evidence that the parties had ever arrived at an agreement that modified the ad hoc arrangement found by the jury. We therefore affirm the order granting defendant's motion for partial summary judgment substantially for the reasons Judge Wefing gave in her comprehensive letter opinion dated August 3, 1989, as supplemented by her letter dated September 6, 1989. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954).
As to the Consumer Fraud Act claim, Judge Wefing used the hearing on plaintiff's motion for leave to amend its amended complaint as the occasion to test the merits of the claim. The judge acted prematurely but correctly. Generally, leave to amend a pleading before trial "should be freely given in the interest of justice" without considering the merits of the amendment. R. 4:9-1. The court may later consider the merits before trial should there be a motion for partial summary judgment. The party who filed the amendment is thereby *309 given notice of the particular aspects of its merits that must be defended. See Judson v. People Bank & Trust Co. of Westfield, supra, at 74-75, 110 A.2d 24 (1954). Having said that, we conclude that the motion to amend was properly denied because on the merits it is clear that the claim alleged in the proposed amendment must fail.
We need only discuss one of the several reasons Judge Wefing gave for determining that the Act does not apply in this case. The Act does not exclude business entities from its protection so long as they are "consumers." Hundred East Credit Corp. v. Eric Schuster, 212 N.J. Super. 350, 354-357, 515 A.2d 246 (App.Div. 1986), certif. den. 107 N.J. 60, 526 A.2d 146 (1986) (sale of computer equipment to business entity for use in its business operations). However, to be a consumer respecting the transaction in question, the business entity must be "one who uses (economic) goods, and so diminishes or destroys their utilities." Id. 212 N.J. Super. at 355, 515 A.2d 246 (quoting Webster's New International Dictionary (2d ed.)). In the transaction here, plaintiff essentially was buying cash from defendant at wholesale to sell to its check-cashing customers at retail. Plaintiff did not diminish or destroy the utility of the cash and therefore did not consume it. Thus Judge Wefing correctly ruled that plaintiff is not a consumer protected by the Act.
Plaintiff argues that it consumed various services that the bank offered such as extending credit, delivering the cash and generally servicing the account. The same may be said, however, respecting any wholesaler who sells and delivers goods to a retailer on credit. Such services are merely incidental to the sale and do not transform the wholesaler into a retailer and the retailer into a consumer.
Affirmed.