CONTE BROS. AUTOMOTIVE, INC., and Hi/Tor Automotive, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

QUAKER STATE–SLICK 50, INC., Slick 50 Management, Inc., Slick 50 Products Corp., Slick 50 Corp., Blue Coral–Slick 50, Inc., Blue Coral, Inc., and Blue Coral–Slick 50, Ltd., Defendants.

Civil Action No. 97–3796(JBS).

United States District Court,
D. New Jersey.

Jan. 28, 1998.

Peter L. Masnik, Kalikman & Masnik, Haddonfield, NJ, Jay Eisenhofer, Megan McIntyre, Grant & Eisenhofer, P.A., Wilmington, DE, for Plaintiffs.

Edward T. Kole, Wilentz, Goldman & Spitzer, Woodbridge, NJ, Bruce Colbath, Gary Berger, Weil Gotshal & Manges L.L.P., New York City, for Defendants.

## OPINION

SIMANDLE, District Judge.

In this false advertising and consumer fraud case, plaintiffs have sued on behalf of themselves and others similarly situated, seeking injunctive and monetary relief. The matter presently before the court is defendants' motion to dismiss the complaint or, alternatively, to strike plaintiffs' class action allegations. Defendants argue that the complaint should be dismissed because (a) plaintiffs lack standing to pursue their claims, and (b) plaintiffs cannot establish the damages element essential to a claim under section 43(a) of the Lanham Act, 15 U.S.C. § 1125, et seq., (which is the alleged source of federal question jurisdiction in this case).[1] The issue presented in this case is whether Section 43(a) of the Lanham Act confers standing upon a retailer to sue the manufacturer of a product that competes with products sold by the retailer. As explained below, we find that it does not. Plaintiffs therefore do not have standing to sue under section 43(a) of the Lanham Act, as plaintiffs are not competitors of defendants, and are not acting as surrogates for a competitor alleged to be injured by defendants. We further find that plaintiffs have not stated a claim upon which relief may be granted under the New Jersey Consumer Fraud Act. All plaintiffs' claims shall therefore be dismissed.

## BACKGROUND

Slick 50 products are aftermarket motor oil substitute engine additives whose active ingredient is primarily polytetrafluoroethylene ("PTFE") (also known as Teflon), in particulate form. (Compl. at ¶ 1.) The two named plaintiffs, Conte Bros. Automotives Inc. ("Conte Bros.") and Hi/Tor are retailers of engine treatment products that compete with Slick 50.[2] (Id. at ¶ 4–5.) Defendants are a group of companies that manufacture, market, and distribute Slick 50 products. (Id. at ¶ 6–12.)

Plaintiffs claim that defendants engaged in a systematic nationwide campaign to advertise and promote Slick 50 products in an intentionally misleading manner, and that this misleading advertising has caused a reduction in sales of motor oil and other engine treatment products that compete with Slick 50. (Id. at ¶ 2–3.) In particular, plaintiffs allege that defendants deceptively and falsely claimed that Slick 50, compared to motor oil on its own, reduces engine wear by 50%, reduces engine wear at start-up, lowers engine temperature during peak operation periods, improves horsepower, increases gas mileage, and reduces toxic emissions. Plaintiffs seek to bring this action on behalf of themselves and "[a]ll persons in the United States who, at any time between the time Slick 50 was first marketed to the public and the present, have offered for sale, either as retailers or wholesalers, motor oil products that compete directly with Slick 50."[3] (Id. at ¶ 15.) Plaintiffs have brought causes of action under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and under the New Jersey Consumer Fraud Act (N.J.S.A. 56:8–1 et seq). (Id. at ¶ 35–44, 45–51.) Plaintiffs seek injunctive and monetary relief. (Id. at p. 17.) This court has subject matter jurisdiction over plaintiffs' Lanham Act claim

1. Defendants also seek, alternatively, to strike plaintiffs' class action allegations on the grounds that (a) the putative class is improperly defined, (b) plaintiffs cannot fairly and adequately protect the interests of absent class members, and (c) the predominance of individual issues over questions common to the class in this case precludes certification of the putative class. Because we find that plaintiffs do not have standing to proceed, infra, we need not reach these arguments regarding class certification.

2. The named plaintiffs assert that they have not been retailers of Slick 50, but rather have only sold products that compete Slick 50. Compl. ¶ 43.

3. It is not clear from this class definition whether plaintiffs seek to represent plaintiffs who sold Slick 50 in addition to other products that compete with Slick 50. However, Paragraph 43 of the complaint suggests not, stating that plaintiffs' misleading statements caused injury to members of the class "because plaintiffs and the Class members sold motor oil and products that compete with Slick 50, but did not sell Slick 50". At oral argument, however, plaintiffs' counsel asserted that the class should include all retailers of products that compete with Slick 50—including those who also sold Slick 50. Because we find, infra, that plaintiffs do not have standing to sue, it is unnecessary for us to inquire whether—as seems likely—such a class would contain parties whose interests were in conflict.

pursuant to 28 U.S.C. §§ 1331 & 1338. Supplemental jurisdiction over plaintiffs' New Jersey Consumer Fraud Act claim arises under 28 U.S.C. § 1367(a).

## DISCUSSION

### I. Standard for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted does not attack the merits of the case, but merely tests the legal sufficiency of the Complaint. *See Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all well-pleaded allegations in the Complaint, and view them in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994); *Hakimoglu v. Trump Taj Mahal Assoc.,* 876 F.Supp. 625, 628–29 (D.N.J.1994), *aff'd,* 70 F.3d 291 (3d Cir.1995). In considering the motion, a district court must also accept as true any and all reasonable inferences derived from those facts. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1100, 1107 (D.N.J.1991). A court may not dismiss the Complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The question before the court is not whether the plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief. *See Hishon v. King &*

*Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). However, while the rules do not dictate that a "claimant set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (quoting *Conley,* 355 U.S. at 47).

### II. Plaintiffs' Claims Under the Lanham Act .

We will begin by addressing whether plaintiffs have stated a claim under Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125.[4] As explained below, we find that plaintiffs cannot state a claim for false advertising under the Lanham Act, because plaintiffs do not have standing to sue.

### A. Standing to Sue Under the Lanham Act

■ The parties disagree regarding the requirements for standing to sue under the Lanham Act. Defendants argue that a plaintiff only has standing to sue for false advertising under the Act if they are "a direct competitor, or an entity that is a surrogate for a direct competitor," and that plaintiffs do not meet this requirement. (Def.s' Br. at 7.) Plaintiffs, in contrast, argue that a plaintiff need not be in a relationship of direct competition with the defendant in order to have standing, but rather need only have "some 'reasonable interest' to be protected against false advertising," a requirement which can .be met by having an indirectly competitive relationship. (Pl.s' Br. at 4–5, 7–8.) Plaintiffs further argue that even assuming, *arguendo,* that a direct competitor or

---

**4.** Section 43(a) of the Lanham Act as amended in 1988 provides that

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin,

sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

surrogate direct competitor relationship is required, plaintiffs meet this requirement. (Pls.' Br. at 9–10.) As explained below, in order to sue under Section 43(a) of the Lanham Act for false advertising, a plaintiff must be a direct commercial competitor of defendant, or be acting as a surrogate for such a competitor, and plaintiffs do not meet this requirement.

The confusion regarding the requirements for standing appears to arise from the Third Circuit's language in *Thorn v. Reliance Van Co., Inc.*, where the court stated that "one need not be a competitor in order to bring a false advertising claim under section 43(a)." 736 F.2d 929, 930 (3d Cir.1984). In that case, the plaintiff ("Thorn") sued defendants ("Reliance"), alleging that Reliance's false advertising had caused the bankruptcy of Florida–Eastern, a company in direct competition with Reliance of which Thorn had been a director and 45% shareholder. The Third Circuit found that even though Thorn was not himself a competitor of defendants, he had standing to sue. *Id.* at 933. In rejecting a strict requirement of direct competition, the court relied upon the "plain meaning" of the Act, which permits an action by "any person who believes that he or she is or is likely to be damaged by such act." *Id.* at 932; 15 U.S.C. § 1125. The Third Circuit in *Thorn* adopted as the dispositive question "whether the party has a reasonable interest to be protected against false advertising." *Id.* at 933. The court found that Thorn met this requirement, since he had alleged "sufficient direct injury" caused by defendants' false advertising and since his status as a director and a 45% shareholder of Florida–Eastern "place him within a class of persons likely to be injured by the types of false representations alleged in this case." *Id.*

Subsequent Third Circuit cases have, in interpreting the *Thorn* opinion, focused upon the "surrogate competitor" status of the plaintiff in that case. *See Serbin v. Ziebart Int'l. Corp., Inc.*, 11 F.3d 1163, 1175 (3d

Cir.1993) (holding that consumers do not have standing to bring a false advertising claim under the Lanham Act, and stating that *Thorn* "permitted a false advertising suit by one who, while not in his own person a competitor of the alleged rogue enterprise, was, nonetheless, so situated that he could reasonably be regarded as a surrogate for such competitor.")[5] The Third Circuit in *Serbin* shed further light upon the parameters of the holding in *Thorn*, explaining that:

> [a]s our holding in *Thorn* demonstrates, we do not construe Section 43(a) as limiting the class of false advertising plaintiffs to those in direct competition. But the *Thorn* plaintiff, as the major shareholder in a firm allegedly driven into bankruptcy by a principal competitor's false advertising, was a particularly appropriate standard bearer for the 'commercial interests' of the bankrupt firm. 'The absence of a less remote party with an interest in challenging the false representations may account for the Third Circuit's decision.'

*Serbin*, 11 F.3d at 1177 (quoting *Restatement of Law: Unfair Competition, Tentative Draft No.1* (April 12, 1988) 59). *See also Petrelli v. Cohen*, No. 93–3906, 1994 WL 52755, *2 (E.D.Pa.1994) (stating that "standing under section 43(a) does not require that plaintiffs allege to be in direct competition with the defendants. However, under *Thorn*, a plaintiff must allege that he has a substantial investment in a business which has been harmed by *a competitor's* false advertising." (emphasis added)).

Thus, although the Third Circuit has rejected a strict requirement of a directly competitive relationship, a plaintiff, to have standing, must allege that he or she is either a direct competitor, or is acting as a surrogate for a direct commercial competitor. Our research has not revealed any cases in which a plaintiff was permitted to sue for false advertising despite a lack of competitive or surrogate competitive relationship.

---

**5.** The Third Circuit's determination in *Serbin* that consumers do not have standing to sue under the Lanham Act reflects a recognition that the plain meaning of the Act, which permits suit by "any person who believes that he or she is or is likely to be damaged" is impracticable, and that the standing question must be determined with reference to the congressional intent in enacting the Act, which was largely to prevent unfair commercial competition. *See Serbin*, 11 F.3d at 1175–1177.

Plaintiffs cite to a Ninth Circuit case, *Smith v. Montoro*, 648 F.2d 602 (9th Cir. 1981), as an example of a case where a plaintiff who was neither a direct nor a surrogate competitor was permitted to sue under the Lanham Act. (*See* Pl.s' Br. at 6–8.) That case, as it has been interpreted by the Ninth Circuit, does not, however, support plaintiffs' position. In *Smith v. Montoro*, the Ninth Circuit conferred standing upon an actor to bring a Lanham Act claim against a film distributor who had allegedly removed the actor's name from both film credits and advertisements and replaced it with the name of another actor; standing was conferred despite the lack of competitive relationship between the plaintiff and the defendant. 648 F.2d at 608. The standing of the *Smith* plaintiff is irrelevant to the instant case, however, since the plaintiff in *Smith* sued for false association, whereas the instant plaintiffs are suing for false advertising. In *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108–09 (9th Cir., 1992) cert. denied 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 355 (1993), the Ninth Circuit explained that the standing requirements vary depending on whether the plaintiffs' Lanham Act claim is a false association claim or a false advertising claim. The Ninth Circuit thereby harmonized *Smith* with other cases where competition was a deemed a requirement for standing. *Id.*

▪ That the Lanham Act provides two separate bases for liability was made clear in the rewriting of the Act in 1989 (subsequent to *Smith)*, which separated the two kinds of claims into separate paragraphs. *See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 27:9 (4th ed.1996) (citing Pub.L. 102–542, § 3(b), 106 Stat. 3567). The Ninth Circuit has explained the differences between these two bases as follows:

[Congress] wrote the purposes of the Lanham Act, two of which are relevant here, into the statute itself: to make 'actionable the deceptive and misleading use of marks in ... commerce' and to 'protect persons engaged in ... commerce against unfair competition.' 15 U.S.C. § 1127 (1988). Section 43(a) reflects both of these purposes, providing two bases of liability: (a) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false association") and (2) false representations in advertising concerning the qualities of goods or services ("false advertising").

*Waits v. Frito–Lay, Inc.*, 978 F.2d at 1108–09.[6] As this thoughtful explanation demonstrates, a plaintiff who claims that another falsely associated their product with the plaintiff, or falsely failed to do so, may well have been harmed by this false association, regardless of whether the parties were in a competitive relationship. In contrast, a plaintiff who claims that another misrepresented the quality of the other's goods or services will, unless they are competitors, be unable to prove that this misrepresentation resulted in damages. Accordingly, as suggested by the Ninth Circuit in *Waits*, a plaintiff who claims false advertising under the Lanham Act must always be a direct competitor or surrogate for a direct competitor, whereas a plaintiff claiming false association need not necessarily be in a competitive relationship with the defendant in order to have standing to sue. In the instant case, plaintiffs' claims are purely claims for false advertising, not for false association; accordingly, plaintiffs must establish that they are either direct competitors of defendants, or surrogates for such competitors, before standing may be conferred upon plaintiffs to sue under Section 43(a) of the Lanham Act.

**6.** The Congressional statement of intent, in full, is as follows:

The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by the State, or in territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

As next explained, we find that plaintiffs are not in competition with defendants, nor are they acting as surrogates for a competitor of defendants. Plaintiffs are retailers of engine additives that compete with Slick 50, whereas defendants are manufacturers and marketers of the engine additive Slick 50. Thus the actual competitors of Slick 50 are not plaintiffs, but rather the companies that produce and market the products that plaintiffs sell; and those companies are not a party to this action. Plaintiffs, furthermore, are not acting as surrogates for those companies that produce and market products in competition with Slick 50; unlike *Thorn*, in the instant case there is no allegation that those companies are, for reasons of bankruptcy or otherwise, unable to act on their own behalf. Plaintiffs' complaint reveals, furthermore, that plaintiffs are not suing for lost profits to those companies, but rather for alleged lost profits of their own retail business. Thus, plaintiffs have not alleged the kind of direct commercial competitive interest that is required for standing to sue for false advertising under the Lanham Act.

In an attempt to salvage their Section 43(a) claim, Plaintiffs have argued that they are in fact direct competitors with defendants because "Slick 50 is sold directly by Defendants to national and regional retail chain stores, to fast lube centers and to resellers and end users in large metropolitan areas," and that "thus, defendants sell Slick 50 to the same customers to whom plaintiffs seek to sell competing products." (Pl.s' Br. at 9.) The former above assertion is a paraphrase of Paragraph 19 of the Complaint, which states in full that

> Slick 50 products are sold to major national retailers directly and through independent distributors. Direct sales are made to national and regional chain stores, to fast lube centers and to resellers and end users in large metropolitan areas. As of December 31, 1996, there were 85 independent distributors selling Slick 50 products in all 50 states. Independent distributors resell to service stations, retailers, automobile dealers, repair shops, fast lube centers, automobile parts stores, retail food chains, fleet and commercial customers and wholesale outlets.

It is unclear from the face of this paragraph who is conducting the "direct sales" referred to in the second sentence of this paragraph. On its face, the paragraph appears to be a description of how the product moves from the defendant manufacturers to the distributors who sell it to retailers and to the public. The final section of Plaintiffs' brief, however, paraphrases the second sentence and portrays it to mean that the defendants make direct sales to the public. (Pl.s' Br. at 9.) We shall resolve this ambiguity by reference to the arguments made by plaintiffs in their brief and at oral argument. As explained below, we find that the new interpretation of the complaint asserted by plaintiffs here is in direct contradiction to all of plaintiffs' other arguments and allegations.

First and most importantly, we note that plaintiffs' brief in fact admits that the parties are not direct competitors.[7] (Pl.s' Br. at 5, n.1.) Furthermore, apart from the single passing reference to "end users" found in paragraph 19, plaintiffs make no other mention in the complaint of any allegation that defendants retail their product to members of the public, despite the fact that it is an issue that may be dispositive of plaintiffs' standing. No explanation is given, for example, in the complaint or the brief, of how, when, or where defendants distribute Slick 50 directly to the public. Likewise, plaintiffs make no attempt to estimate the scale on which distribution directly to the public is allegedly practiced by defendants. Furthermore, plaintiffs devoted the majority of their brief and oral argument to persuading the court that direct competition is not a requirement for standing, and they made numerous arguments premised upon the assumption that the parties are not direct competitors and that defendants are not retailers of Slick 50 products. For example, during oral argument, plaintiffs' counsel repeatedly cited to *Camel Hair and Cashmere Inst. of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d

---

7. Plaintiffs state that "although Plaintiffs are not in direct competition with Defendants, they have the requisite commercial or competitive interest to bring a false advertising claim under the Lanham Act." (Pl.s' Br. at 5, n.1.)

6, 12 (1st Cir.1986), for the proposition that plaintiffs have standing even though they are on a "different level" in the chain of distribution than are defendants, an argument addressed further *infra.*

Finally, we note that the harm alleged to have been done to plaintiffs is not harm caused by the competitive practices of defendants acting as a retailer. Rather, it is harm allegedly caused by defendants' mischaracterization of the relative effectiveness of the products sold by plaintiffs, as compared to Slick 50. In other words, plaintiffs do not allege that defendants ran advertisements that said "don't buy engine additives at Conte Brothers or Hi/Tor—instead, buy Slick 50 directly from the manufacturer." Such an advertisement could indeed constitute a case of direct competition of the sort the Lanham Act was designed to address— but no such statement is alleged to have been made in this case. Thus, having interpreted paragraph 19 of the complaint by reference to plaintiffs' own arguments and allegations, we must conclude that defendants are not retailers of Slick 50, and are not in direct competition with plaintiffs.

■ Plaintiffs argue in the alternative that even if they do not have a directly competitive relationship with defendants, they have an indirectly competitive relationship that suffices for purposes of standing. (Pls' Br. at 7–8.) In support of this proposition, Plaintiffs cite to *Camel Hair and Cashmere Inst. of America, Inc. v. Associated Dry Goods Corp.,* 799 F.2d 6, 12 (1st Cir.1986), where a trade association, which represented manufacturers and marketers of cashmere clothing, was conferred standing to sue retailers of coats that were mislabeled as 50% cash-

mere despite containing a much lower percentage of cashmere. None of the members of the plaintiff association was in direct competition with defendants, since the plaintiffs were mostly manufacturers and marketers of pure cashmere fabrics, while the defendants were retailers of cashmere-blend coats. *Id.* at 12. At oral argument, plaintiffs in the instant case argued that although they are retailers of engine additives, while defendants are manufacturers and marketers of engine additives, plaintiffs have a sufficiently competitive relationship with defendants to confer standing, since, under *Camel Hair,* the parties need not be at the same level in the chain of distribution.

Once again, however, plaintiffs fail to recognize the distinction between false association claims—which *Camel Hair* was [8], as opposed to false advertising claims, such as the instant case.[9] It stands to reason that the plaintiffs in *Camel Hair,* though not direct competitors of defendants, were likely to be able to show that they were harmed by the mislabeling of the coats as cashmere, due to the risk that the public would associate the products made by plaintiffs with the lower quality products retailed by defendants. In contrast, in the instant case, plaintiffs were not bound to any particular product; if, as a result of Slick 50's false advertising, the fortunes of motor oils began to fall, and the fortunes of Teflon-containing synthetic additives such as Slick 50 to rise, then plaintiffs, as retailers, had the option of altering their inventory to meet the changing consumer demand.[10] Thus, any interest that plaintiffs had in preserving the reputation of motor oil and other competitors of Slick 50 appears to

8. The portion of the Lanham Act (prior to the 1988 amendment) under which the plaintiff sued in *Camel Hair* was the provision that " '[a]ny person who shall affix, apply, or annex or use in connection with any goods or services ... any false description or representation ... shall be liable to a civil action by ... any person who believes that he is or is likely to be damaged by the use of such false description or representation.' " 799 F.2d at 10.

9. That this distinction is not clearly articulated by the court in *Camel Hair* is presumably explained by the fact that the case was decided prior to the 1988 amendments to the Lanham

Act, in which the distinction between false association claims and false advertising claims was highlighted by the separation of the two claims into separate numbered paragraphs.

10. Plaintiffs have not alleged that they were the official distributor for a particular motor oil, bound by contract to not sell any competing product. Such an allegation would more likely support a finding of a competitive relationship between plaintiffs and defendants, as the destiny of the retailer would in that case be directly tied to the destiny of the motor oils with which Slick 50 was directly competing and which the defendant was allegedly falsely maligning.

be a theoretical, rather than actual economic interest.

For all the reasons stated above, therefore, we find that plaintiffs have not alleged that they are in direct competition with defendants, nor that they are acting as surrogates for a direct competitor of defendants. Accordingly, plaintiffs do not have standing to sue for false advertising under Section 43(a) of the Lanham Act, and their claims under the Act must therefore be dismissed.

### III. *Claim Under the New Jersey Consumer Fraud Act*

■ We now turn to defendants' assertion that plaintiffs lack standing to sue under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8–2 (West 1989) because plaintiffs are not consumers.[11] As explained below plaintiffs lack standing to sue under the NJCFA. It is well-settled law that one must be a "consumer" in order to sue under this Act, and that commercial resellers such as plaintiffs do not qualify as "consumers". *See City Check Cashing, Inc. v. National State Bank,* 244 N.J.Super. 304, 309, 582 A.2d 809 (App.Div.1990), *certif. denied,* 122 N.J. 389, 585 A.2d 391 (1990) (citing *Hundred East Credit Corp. v. Eric Schuster,* 212 N.J.Super. 350, 354–357, 515 A.2d 246 (App.Div.1986), *certif. denied,* 107 N.J. 60, 526 A.2d 146 (1986)).[12]

We furthermore decline plaintiffs' invitation to construe the Act to permit non-consumers such as plaintiffs to assert claims thereunder. Plaintiffs have not persuaded us that a New Jersey state court faced with the case before us would do so, and we must, under such circumstances, apply New Jersey law consistent with the well-settled interpretation and application of the law by New Jersey courts.

### CONCLUSION

For the reasons stated above, plaintiffs do not have standing to sue for false advertising under Section 43(a) of the Lanham Act, as they are not competitors of defendants, and are not acting as surrogates for a competitor alleged to be injured by defendants. Likewise, plaintiffs do not have standing to sue under the New Jersey Consumer Fraud Act, as they are not consumers. Accordingly, plaintiffs' claims under both the Lanham Act and the NJCFA must be dismissed. An appropriate Order follows.

### ORDER

This matter having come before the court upon defendants' motion to dismiss the complaint or, alternatively, to strike plaintiffs' class action allegations; and the court having considered the submissions of the parties; and the court having heard oral argument by the parties; and for the reasons stated in the accompanying Opinion;

IT IS, this 28th day of January, 1998, hereby

ORDERED that plaintiffs' complaint shall be DISMISSED.

---

11. The NJCFA provides, in relevant part, that the following shall be an "unlawful practice":

    [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

    N.J. Stat. Ann. § 56:8–2 (West 1989).

12. Furthermore, in the two cases cited by the parties in which standing was conferred upon non-consumers, standing was conferred upon commercial competitors. *See · General Development Corp. v. Binstein,* 743 F.Supp. 1115, 1131 (D.N.J.1990); *Feiler v. N.J. Dental Association,* 191 N.J.Super. 426, 432, 467 A.2d 276 (Ch.Div. 1983), *certif. denied,* 99 N.J. 162, 491 A.2d 673 (1984). As explained *supra,* plaintiffs are not direct competitors with defendants.