756 A.2d 636 (2000)
333 N.J. Super. 587
ARC NETWORKS, INC., Plaintiff,
v.
The GOLD PHONE CARD CO., INC., Defendant.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided April 27, 2000.
*637 David C. Berman, P.C. and Edward Breen, on the brief, Morristown, for plaintiff.
Philip R. Kaufman, Edison, for defendant.
PERRI, J.S.C.
This matter involves the interpretation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("the Act"), as it relates to the sale of computer network and long distance telephone services to a distributor of prepaid telephone cards.
Plaintiff Arc Networks, Inc. ("Arc"), is a corporation duly authorized to conduct business in the State of New Jersey. It is in the business of providing computer network and bulk telephone switching services for long distance telephone calls. Defendant The Gold Phone Card Co., Inc. ("Gold Phone"), is a corporation of the State of New Jersey and is a distributor of prepaid telephone cards sold to retail outlets under its own and other brand names.
Gold Phone's cards, which are sold in denominations of $5, $10, $20 and $50, provide purchasers with "800" numbers and account identification ("PIN") numbers by which card holders can access Arc's long distance telephone services. In addition to its telephone and computer switching services, Arc keeps computer records of phone account balances on cards that have been sold. Arc's services are not available to the general public.
In or about April of 1997, the parties entered a contract under which Arc agreed to provide the above described services to Gold Phone. Gold Phone asserts that Arc was unable to handle the volume of calls which were coming in on its system and that the "800" numbers would not function or would provide users with a busy signal. A dispute arose regarding Arc's claims for payment under the contract and Gold Phone's demands for credits for inadequate service. The dispute culminated in Arc's deactivation of all Gold Phone cards, which included the termination of services on cards that had already been distributed to consumers. When Arc sued Gold Phone for the balance due under the contract, Gold Phone counterclaimed for damages and included a Count alleging violation of the New Jersey Consumer Fraud Act. Arc now moves to dismiss the consumer fraud claim as a matter of law.
The issues presented in this matter are 1) whether the transaction between Arc and Gold Phone is a "consumer transaction" within the purview of the Act; and 2) whether Gold Phone, whose function is akin to that of a distributor of Arc's services, qualifies as a "consumer" within the meaning of the Act.
The Consumer Fraud Act is intended to protect consumers who purchase *638 "goods or services generally sold to the public at large". Marascio v. Campanella, 298 N.J.Super. 491, 499, 689 A.2d 852 (App.Div.1997). The entire thrust of the Act is "pointed to products and services sold to consumers in the popular sense". Neveroski v. Blair, 141 N.J.Super. 365, 378, 358 A.2d 473 (App.Div.1976). While the term "consumer" has historically connoted an individual purchaser, the Act has been interpreted to afford protection to corporate and commercial entities who purchase goods and services for use in their business operations. See Hundred East Credit Corp. v. Eric Schuster, 212 N.J.Super. 350, 515 A.2d 246 (App.Div.), certif. denied, 107 N.J. 60, 526 A.2d 146 (1986); Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J.Super. 171, 643 A.2d 649 (App.Div.1994).
As remedial legislation, the provisions of the Act are to be "construed liberally in favor of the consumer to accomplish its deterrent and protective purposes." Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139, 741 A.2d 591 (1999). At the same time, the Act is not intended to cover every transaction that occurs in the marketplace. Its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself. See City Check Cashing, Inc. v. National State Bank, 244 N.J.Super. 304, 582 A.2d 809 (App.Div.1990), where the court held that a check cashing service was not a "consumer" of bank services within the meaning of the Act. Also see BOC Group v. Lummus Crest, Inc., 251 N.J.Super. 271, 597 A.2d 1109 (Law Div.1990), where the court held that the purchaser of an experimental petroleum refining concept and services incidental thereto was not a "consumer" of "merchandise" under the Act.
Pursuant to N.J.S.A. 56:8-4, the Attorney General is empowered to promulgate rules and regulations necessary to accomplish the objective of the Act. Pursuant to this authority, the Division of Consumer Affairs has identified various types of consumer transactions for goods and/or services to which the Act applies. The list provides insight into the types of transactions envisioned to be within the scope of the Act. These include automotive repairs and advertising, delivery of household furniture and furnishings, disclosure of refund policies in retail establishments, home improvement practices, merchandise advertising, the servicing and repair of home appliances and the sale of animals and meat. N.J.A.C. 13:45A-1.1 et seq.
The bulk telephone and computer services that Gold Phone purchased from Arc were not available to the general public. They could only be accessed through the "800" numbers and PINs that Gold Phone provided to purchasers of its phone cards. The transaction between Gold Phone and Arc contains none of the characteristics or indicia of the "consumer transactions" defined under the Code nor does Gold Phone qualify as a "consumer" for purposes of maintaining its counterclaim against the plaintiff under the Consumer Fraud Act.
The situation presented in the within matter is analogous to that which faced the court in City Check Cashing, Inc. v. National State Bank, supra. In that case, the plaintiff, a check cashing service, attempted to assert a consumer fraud claim against a bank that froze its account in violation of an alleged oral agreement. The court characterized the plaintiff's business as one in which "the plaintiff was essentially buying cash from the defendant bank at wholesale to sell to its checkcashing customers at retail". Id. at 308, 582 A.2d 809.
In City Check Cashing, the court defined a consumer as "one who uses (economic) goods, and so diminishes or destroys their utilities." Id. at 309, 582 A.2d 809, citing Hundred East Credit Corp. v. Eric Schuster, supra at 355, 515 A.2d 246. Applying this definition, the court reasoned that "plaintiff did not diminish or destroy the utility of the cash and therefore did not consume it." City Check *639 Cashing, supra at 309, 582 A.2d 809. The same is true in the within matter. Gold Phone's business purpose in purchasing Arc's services was to make them available to users of its phone cards. In so doing, it did not diminish, destroy or consume Arc's services.
Gold Phone argues that its position is distinguishable from that of the plaintiff in City Check Cashing because it "consumed" Arc's services by supplying Gold Phone cards to its own employees for their use. Gold Phone's attempt to obtain standing under the Act on this basis belies both the essential nature of its cause of action and the damages it seeks by way of its counterclaim. Gold Phone's purpose in contracting for Arc's services was to resell those services to purchasers of its phone cards. Its own use of the cards was at best incidental to the essential purposes of the contract. More importantly, Gold Phone's claim against Arc is not for damages it personally sustained based on individual card use. Its claim is for business losses resulting from Arc's failure to perform under the contract and Arc's alleged failure to issue appropriate credits to Gold Phone's customer accounts.
Accordingly, Arc's motion must be granted and Gold Phone's counterclaim for damages under the Consumer Fraud Act is dismissed as a matter of law.