910 A.2d 625 (2006)
389 N.J. Super. 8
PAPERGRAPHICS INTERNATIONAL, INC., a New Hampshire Corporation, Plaintiff-Respondent,
v.
Juan "J.J." CORREA, Jr., Liquidation Direct, Inc. d/b/a Liquidationdirect.Com, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 2006.
Decided November 28, 2006.
*626 Salvatore Salibello, Morristown, argued the cause for appellants (Mr. Salibello, of counsel and on the brief).
Craig A. Ollenschleger, Roseland, argued the cause for respondent (Orloff, Lowenbach, Stifelman & Siegel, attorneys; Mr. Ollenschleger, of counsel and on the brief).
Before Judges KESTIN, GRAVES and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.T.C. (temporarily assigned).
Defendants Liquidation Direct, Inc. (LD) and its owner, Juan "J.J." Correa, appeal from the entry of final judgment awarded to plaintiff, Papergraphics International, Inc., which included a treble damage award pursuant to the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -109. We affirm the trial court's finding of liability, except, we conclude the court erred in applying the CFA to this sales transaction. Accordingly, we remand for modification of the judgment to reflect a proper award of damages.
After buying excess computer inventory, LD advertised goods for wholesale distribution through its internet website, known as Liquidationdirect.com. These products could be bought through telephone or email orders. Plaintiff sent an email to Correa offering to buy certain Epson printer ink jet cartridges that were "100% original and in perfect condition." Correa's email reply stated, "I have epson [sic] ink cartridges. New factory-sealed[,] any interest[,] please call." Samples of the cartridges were provided to plaintiff for examination.
Plaintiff purchased 5,000 cartridges at a cost of $40,450. Upon delivery, LD's representative observed plaintiff's employee review the goods by counting the pieces and examining the cartridges' packaging. The shipment was accepted and plaintiff issued payment. Thereafter, a second order for 4,714 cartridges was placed, for which plaintiff paid $38,952.
Plaintiff later learned the cartridges were not authentic. Plaintiff advised LD of its refusal to keep the counterfeit goods and its desire for a refund of the purchase price paid for both shipments. LD declined. Plaintiff sued, alleging breach of contract, breach of UCC warranties, unjust enrichment, fraud, conversion, and consumer fraud.
At the close of discovery, plaintiff's expert, Howard Seitz, who served as a Counterfeit Investigator for Epson America, Inc., submitted a certification describing his inspection of the cartridges. In his opinion, the cartridges were counterfeit because the Epson trademark hologram was incorrect and all the cartridges bore the same date code and place of origin.
Following cross-motions for summary judgment, the motion judge, relying on Seitz's unrefuted certification, determined the cartridges were counterfeit and granted plaintiff's motion for partial summary judgment. Thereafter, the balance of the complaint was voluntarily dismissed. Final judgment was entered for plaintiff in the amount of $278,505.16, which included the total sales' cost paid of $79,402, trebled under the CFA, along with an award of attorney's fees and costs of $40,299.16.
*627 Our review of the record and all arguments presented satisfies us that the motion judge properly granted summary judgment on causes other than the CFA action and judgment on those causes shall not be disturbed on appeal, as we find no denial of justice. Gillman v. Bally Mfg. Corp., 286 N.J.Super. 523, 528, 670 A.2d 19 (App.Div.), certif. denied, 144 N.J. 174, 675 A.2d 1122 (1996) (quoting Goodyear Tire and Rubber Co. v. Kin Props., Inc., 276 N.J.Super. 96, 106, 647 A.2d 478 (App. Div.), certif. denied, 139 N.J. 290, 654 A.2d 470 (1994)). Plaintiff's expert opined the goods were counterfeit, while defendants failed to establish any contrary contention. Thus, "the evidence `[was] so one-sided that one party must prevail as a matter of law.'" Housel v. Theodoridis, 314 N.J.Super. 597, 603-04, 715 A.2d 1025 (App.Div. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986)). We determine the legal issues raised by defendants' appeal, other than the application of the CFA, are without merit, R. 2:11-3(e)(1)(E), and, accordingly, we uphold the motion judge's grant of summary judgment to plaintiff on liability and the award of damages totaling $79,402.
We next address plaintiff's standing to assert a CFA claim. Defendants argue CFA remedies are not available, as a matter of law, asserting the commercial transaction between the parties was not a covered "consumer" transaction, because plaintiff did not purchase the product for use in its operation. See Coastal Group v. Dryvit Sys. Inc., 274 N.J.Super. 171, 179, 643 A.2d 649 (App.Div.1994); Hundred East Credit Corp. v. Eric Schuster Corp., 212 N.J.Super. 350, 355-57, 515 A.2d 246 (App.Div.), certif. denied, 107 N.J. 60, 526 A.2d 146 (1986). Plaintiff counters, arguing the goods sold were counterfeit "consumer goods" requiring imposition of CFA remedies, regardless of plaintiff's intention to resell the goods after purchase.
The CFA statute proscribes the following conduct:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[ ] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby is declared to be an unlawful practice. . . .
[N.J.S.A. 56:8-2.]
The Supreme Court in Cox v. Sears Roebuck & Co., 138 N.J. 2, 14-15, 647 A.2d 454 (1994), described the CFA's limited available legislative history, stating:
In 1960, the Legislature passed the Consumer Fraud Act "to permit the Attorney General to combat the increasingly widespread practice of defrauding the consumer." Senate Committee, Statement to the Senate Bill No. 199 (1960). The Act conferred on the Attorney General the power to investigate consumer-fraud complaints and promulgate rules and regulations that have the force of law. N.J.S.A. 56:8-4. In 1971, the Legislature amended the Act to "give New Jersey one of the strongest consumer protection laws in the nation." Governor's Press Release for Assembly Bill No. 2402, at 1 (Apr. 19, 1971). The Legislature expanded the definition of "unlawful practice" to include "unconscionable commercial practices" and broadened the Attorney General's enforcement powers. Ibid. That amendment also provided for private causes of *628 action, with an award of treble damages, attorneys' fees, and costs. Ibid. Governor Cahill believed that those provisions would provide "easier access to the courts for the consumer, [would] increase the attractiveness of consumer actions to attorneys and [would] also help reduce the burdens on the Division of Consumer Affairs." Governor's Press Release for Assembly Bill No. 2402, at 2 (June 29, 1971).
[Cox, supra, 138 N.J. at 14-15, 647 A.2d 454.]
While the clear statutory objective is to protect consumers, neither the term "consumer" nor "consumer transaction" is found within the statute's definitional provisions. See N.J.S.A. 56:8-1.
Initially, the word "consumer" in the CFA was interpreted in the context of "[its] ordinary meaning . . . in the market place," affording protection to individual purchasers. Neveroski v. Blair, 141 N.J.Super. 365, 378, 358 A.2d 473 (App. Div.1976).[1]See Levin v. Lewis, 179 N.J.Super. 193, 200, 431 A.2d 157 (App. Div.1981); Arc Networks, Inc. v. Gold Phone Card Co., Inc., 333 N.J.Super. 587, 590, 756 A.2d 636 (Law Div.2000).
Thereafter, to accomplish the CFA's remedial purposes, its provisions have been interpreted broadly. Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 264, 696 A.2d 546 (1997); Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350 (1997); Leon v. Rite Aid Corp., 340 N.J.Super. 462, 467, 774 A.2d 674 (App. Div.2001). Characterizing consumers as those who both "use and consume economic goods and services," protections under the CFA were extended to corporate plaintiffs "in a consumer oriented situation." BOC Group, Inc. v. Lummus Crest, Inc., 251 N.J.Super. 271, 277, 597 A.2d 1109 (Law Div.1990). See also Coastal Group, supra, 274 N.J.Super. at 179, 643 A.2d 649 (upholding CFA claim brought by condominium developer against seller of prefabricated wall panels); Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 226 N.J.Super. 200, 209, 543 A.2d 1020 (App.Div.1988), aff'd, 118 N.J. 249, 571 A.2d 294 (1990) (upholding corporate plaintiff's CFA claim relating to purchase of a yacht); Hundred East Credit Corp., supra, 212 N.J.Super. at 355, 515 A.2d 246 (upholding corporate plaintiff's CFA claim relating to purchase of computer peripherals).
Examination of reported decisions reveals, notwithstanding a broad and liberal reading of the statute, the CFA does not cover every sale in the marketplace. Rather, CFA applicability hinges on the nature of a transaction, requiring a case by case analysis. See Hundred East Credit Corp., supra, 212 N.J.Super. at 356-57, 515 A.2d 246. For example, CFA protections were found to be inapplicable to the purchase of non-consumer goods, see J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1273 (3d Cir.1994) (finding CFA inapplicable to purchase of commercial restaurant franchise); A.H. Meyers & Co. v. CNA Ins. Co., 88 Fed.Appx. 495 (3d Cir.2004) (finding CFA inapplicable to insurance agency agreement), or to sales which were not found to be consumer transactions. See also Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F.Supp.2d 557, 561 (D.N.J. 2002) (holding plaintiff's use of defendant's accounting, inventory and chargeback processing services not covered by CFA); *629 Werner & Pfleiderer Corp. v. Gary Chem. Corp., 697 F.Supp. 808, 815 (D.N.J.1988) (holding commercial contract for purchase of a plastics processing machine not covered by CFA); D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J.Super. 11, 23-24, 501 A.2d 990 (App.Div.1985) (holding defendant's breach of warranty in purchase of custom tow truck not covered by CFA); BOC Group, Inc., supra, 251 N.J.Super. at 277, 597 A.2d 1109 (finding problems in the design, engineering, and operation of a $125 million refining process plant not covered by CFA).
Several courts have also determined that a wholesale buyer of goods intended for resale is not a "consumer," and the sale is a non-consumer transaction outside the ambit of CFA protection. Lithuanian Commerce Corp. v. Sara Lee Hosiery, 179 F.R.D. 450, 469 (D.N.J.1998) (finding plaintiff's purchase of pantyhose from defendant for resale was not a consumer transaction within the purview of the CFA); Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 992 F.Supp. 709, 716 (D.N.J.) (finding plaintiff to be "commercial resellers" who did not qualify as "consumers" under the CFA), aff'd, 165 F.3d 221 (1998); Windsor Card Shops, Inc. v. Hallmark Cards, Inc., 957 F.Supp. 562, 567 n. 6 (D.N.J.1997) (finding plaintiff which purchased goods at wholesale to sell to its retail store customers not to be a consumer, as it did not "diminish or destroy the utility of the goods"); City Check Cashing, Inc. v. National State Bank, 244 N.J.Super. 304, 309, 582 A.2d 809 (App. Div.) (CFA application denied as "plaintiff essentially was buying cash from defendant at wholesale to sell to its check-cashing customers at retail"), certif. denied, 122 N.J. 389, 585 A.2d 391 (1990); Arc Networks, supra, 333 N.J.Super. at 590, 756 A.2d 636 (plaintiff's purpose in purchasing services was to offer them to its customers thus, the CFA was inapplicable).
In the present matter, although plaintiff purchased a common consumer product, plaintiff was not a "consumer" under the CFA and the nature of this sale demonstrates it was not the type of "consumer transaction" covered by the statute. Plaintiff's total purchase of 9,714 printer ink cartridges was for resale at a significant profit, not for its individual use. The quantity of goods purchased, along with the purpose of the purchase, belies CFA application. Further, the parties were experienced commercial entities of relatively equal bargaining power which engaged in negotiated contracts. See Electric Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F.Supp.2d 394, 399 (D.N.J.2000). Plaintiff was not an unsophisticated buyer, suffering a disparity of industry knowledge, victimized after being lured into this purchase through fraudulent, deceptive selling or advertising practices. See D'Ercole Sales, supra, 206 N.J.Super. at 23-24, 501 A.2d 990. Finally, plaintiff knew the potential risks of imitation products being manufactured overseas and took steps to guard against the possibility of purchasing counterfeit goods by requesting and reviewing a sample ink cartridge before placing its order. Plaintiff also examined the shipment's packaging upon delivery. It was only after plaintiff obtained a formal expert assessment to discern authenticity did it discover the undetected fraud. Denying relief to plaintiff under the CFA, in this matter, will not thwart the central purpose of the legislation. Thus, we reverse the finding of liability under the CFA along with the treble damage award.
Affirmed in part; reversed in part; remanded for the entry of a modified judgment. We do not retain jurisdiction.
NOTES
[1] The holding in Neveroski was abrogated by the 1976 statutory amendment adding "the sale or advertisement of . . . real estate" to the provisions of N.J.S.A. 56:8-2. See Arroyo v. Arnold-Baker Assocs., Inc., 206 N.J.Super. 294, 502 A.2d 106 (Law Div.1985); See also Hardwicke v. American Boychoir Sch., 188 N.J. 69, 115, 902 A.2d 900 (2006).