212 N.J. Super. 350 (1986)
515 A.2d 246
HUNDRED EAST CREDIT CORPORATION, PLAINTIFF,
v.
ERIC SCHUSTER CORPORATION, DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT,
v.
NORTH AMERICAN PHILIPS CORP. AND PHILIPS BUSINESS SYSTEMS, INC., THIRD PARTY-DEFENDANTS-FOURTH PARTY-PLAINTIFFS-APPELLANTS,
v.
DATA SYSTEMS OF NEW JERSEY, INC., AND JOHN FITZSIMONS, FOURTH PARTY-DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1986.
Decided September 11, 1986.
*352 Before Judges GAULKIN, DEIGHAN and STERN.
Nicholas L. Ribis argued the cause for appellants (Ribis, McCluskey, Graham & DeCotiis, attorneys; Nicholas L. Ribis and Richard E. Dorl, a member of the New York Bar, of counsel; George C. Jones and Brian D. Spector, on the brief).
*353 Howard Stern argued the cause for respondent (Stern, Steiger, Croland & Conway, attorneys; John J. Stern and Edward P. D'Alessio, on the brief).
The opinion of the court was delivered by GAULKIN, J.A.D.
North American Philips Corp. and Philips Business Systems, Inc. (hereinafter jointly referred to as "Philips") appeal from a judgment in favor of Eric Schuster Corporation (Schuster) awarding treble damages and attorneys' fees and costs pursuant to N.J.S.A. 56:8-1 et seq., commonly known as the Consumer Fraud Act (Act).
Schuster's claims, pleaded both under the Act and in common law fraud, arose out of its 1976 purchases from Philips of a P-142 disc unit and a P-143 disc drive (peripherals) to expand the capacity of a P-359 computer which Schuster had bought from Philips in 1974. After a bench trial, the trial judge found[1] that at the time of the 1976 sales Philips knew that production of the P-350 line of computers, including the P-359, "would end some time in 1976" but nevertheless "continued to market and sell the computers ... in an organized, systematic plan to liquidate the inventory of P-350 line computers so as to avoid sustaining a loss of profits on these items." The judge further found that at the time Philips sold the peripherals neither Schuster nor the "consuming public" had been informed of the imminent discontinuance of the P-350 line. Discontinuing manufacture of the P-350 series in 1976 meant that Schuster *354 was "unable to accomplish the objectives which motivated its purchases in the first instance." The judge concluded that Philips' conduct was fraudulent and also constituted "unconscionable commercial practices" within the meaning of N.J.S.A. 56:8-2. He found compensatory damages of $199,506.50 and, pursuant to N.J.S.A. 56:8-19, awarded treble damages of $598,519.50 and attorneys' fees and costs of $154,760.65.

I.
Philips first argues that the Act "was not meant to apply to the sale of merchandise for use in business operations" but rather "was intended for the protection of the consumer in the context of the personal, family or household use of goods and services." We find the contention unpersuasive.
N.J.S.A. 56:8-2 declares to be an unlawful practice
[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.
An "unlawful practice" thus can be committed by "any person" with respect to the sale or advertisement of "any merchandise." "Person" is defined in N.J.S.A. 56:8-1(d) as including
any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof.
"Merchandise" is defined in N.J.S.A. 56:8-1(c) as including
any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale.
Any "person" who suffers "any ascertainable loss of moneys or property" as a result of any "practice declared unlawful" may bring an action; if successful, the plaintiff "shall" recover treble damages, attorneys' fees and costs of suit. N.J.S.A. *355 56:8-19; Skeer v. EMK Motors, Inc., 187 N.J. Super. 465 (App. Div. 1982).
Nothing in that statutory language suggests that the Act is inapplicable to the sale of merchandise for use in business operations. To the contrary, the language on its face makes the Act applicable to all sales of "merchandise" without regard to its intended use or the nature of the buyer. And a corporation or other business entity is a "person" entitled to sue under the Act. Philips nevertheless urges that the Act is intended to protect "consumers," which, it argues, does not include business entities.
The Act unquestionably was designed to protect consumers. Kugler v. Romain, 58 N.J. 522, 535-39 (1971); New Mea Const. Corp. v. Harper, 203 N.J. Super. 486, 500-502 (App.Div. 1985); Skeer v. EMK Motors, Inc., supra, 187 N.J. Super. at 469-73; Neveroski v. Blair, 141 N.J. Super. 365, 378 (App.Div. 1976). Although "the strongest case for relief" is presented by "the poor, the naive and the uneducated" (Kugler, supra, 58 N.J. at 538), others can qualify as "consumers" as well. The term "consumer" is only occasionally used, and is not defined, in the Act; its generally recognized meaning is "one who uses (economic) goods, and so diminishes or destroys their utilities." Webster's New International Dictionary, 2d edition. That definition has been frequently used by courts in statutory interpretation. See, e.g., J.W. Meadors & Co. v. State, 89 Ga. App. 583, 80 S.E.2d 86, 88 (1954); St. Paul & Tacoma Lumber Co. v. State, 40 Wash.2d 347, 243 P.2d 474, 478 (1952); Union Portland Cement Co. v. State Tax Commission, 110 Utah 135, 170 P.2d 164, 171 (1946); Ex parte Mehlman, 127 Tex.Cr.R. 257, 75 S.W.2d 689, 690 (Ct.Crim.App., 1934).
Surely a business entity can be, and frequently is, a consumer in the ordinary meaning of that term. See, e.g., Bailey Employment System, Inc. v. Hahn, 545 F. Supp. 62 (D.C. Conn.,1982), aff'd 723 F.2d 895 (2d Cir., 1983); Big H. Auto Auction, Inc. v. Saenz Motors, 665 S.W.2d 756 (Tex., 1984); *356 Musil v. Hendrich, 6 Kan. App.2d 196, 627 P.2d 367 (Ct.App., 1981). Since a business entity is also a "person" entitled to recover under the Act, there is no sound reason to deny it the protection of the Act. D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 23 (App.Div. 1985); cf. Bailey Employment System, Inc. v. Hahn, supra, 545 F. Supp. 62. There is similarly no justification to limit the Act, as urged by Philips, to sales and advertising of merchandise for "personal, family or household use." Such a reading would fly in the face of the statutory definitions of "merchandise" and "person" entitled to sue. Cf. Morgan v. Air Brook Limousine, Inc., 211 N.J. Super. 84 (Law Div. 1986); Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216 (Ch.Div. 1972).
We recognize, of course, the case law which holds that the broad language of the Act must be appropriately confined to reflect the legislative aim. See, e.g., Daaleman v. Elizabethtown Gas Company, 77 N.J. 267 (1978) (Act not applicable to implementation of tariff which is subject to PUC supervision and control); Pierzga v. Ohio Cas. Group, 208 N.J. Super. 40 (App.Div. 1986) (Act not applicable to insurance claim payment practices as to which the Department of Insurance has exclusive regulatory jurisdiction); DiBernardo v. Mosley, 206 N.J. Super. 371 (App.Div. 1986) (Act not applicable to sale by home-owner of one-family house); Westervelt v. Gateway Financial Service, 190 N.J. Super. 615 (Ch.Div. 1983) (Act not applicable to transaction governed by the Secondary Mortgage Loan Act). But we are satisfied that reading the statutory language to include business entities and business merchandise advances the legislative aim of protecting consumers from unlawful practices.
Business entities, like individual consumers, cover a wide range. Some are poor, some wealthy; some are naive, some sophisticated; some are required to submit, some are able to dominate. Even the most world-wise business entity can be inexperienced and uninformed in a given consumer transaction. *357 Unlawful practices thus can victimize business entities as well as individual consumers. It may well be, of course, that certain practices unlawful in a sale of personal goods to an individual consumer would not be held unlawful in a transaction between particular business entities; the Act largely permits the meaning of "unlawful practice" to be determined on a case-by-case basis. Cf. Kugler, supra, 58 N.J. at 543; D'Ercole, supra, 206 N.J. Super. at 29-31. But to exclude business entities from any protection of the Act would contravene its manifest purpose as well as its unambiguous language.

II
Philips argues that the proofs do not support the trial judge's findings of common law and consumer fraud. We find the contention to be without merit. R. 2:11-3(e)(1)(A).
Our careful review of the record satifies us that the findings of fact set forth by the trial judge in his letter opinions of July 8, 1981 and February 8, 1985 are fully supported by the record. In particular, we find ample support for the trial judge's findings that in its 1976 sales of the peripherals Philips knowingly withheld from Schuster the fact that the P-350 computer line was about to be discontinued; that Philips falsely represented that parts and peripherals for the continued upgrading of the P-359 computer would be available; that Schuster relied upon those representations; that Philips in fact had no inventory of parts and equipment available; that the peripherals bought in 1974 did not meet Schuster's needs or Philips' representations, and that Schuster suffered economic losses as a result. There is no warrant for us to disturb those findings. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974). We are equally persuaded that those findings of fact justify and support the trial judge's conclusions that Philips had committed both common law fraud and unlawful practices within the meaning of N.J.S.A. 56:8-2.

*358 III
Philips urges that the trial judge erred in refusing to recuse himself from the remand proceedings. Recusal was required, it is asserted, because on the prior appeal Philips had successfully contended that the trial judge had committed error and because the judge's fraud findings at the initial trial "gave rise to a substantial insecurity on the part of these litigants as to whether a fair and unbiased determination of the fraud issue could be rendered by the same finder of fact who had determined the issue at the first trial."
Recusal is a matter entrusted in the first instance to the discretion of the trial judge himself. Bonnet v. Stewart, 155 N.J. Super. 326, 330 (App.Div.), certif. den. 77 N.J. 468 (1978). It is not only unnecessary for a judge to withdraw from a case upon a mere suggestion that he is disqualified: it is improper for him to do so unless the alleged cause of recusal is known by him to exist or is shown to be true in fact. Clawans v. Schakat, 49 N.J. Super. 415, 420-21 (App.Div. 1958). The mere fact that a judgment resulting from previous proceedings had been reversed on appeal is not a sufficient ground for recusal. State v. Walker, 33 N.J. 580, 591 (1960), cert. den. 371 U.S. 850, 83 S.Ct. 89, 9 L.Ed.2d 86 (1962). And a judge is not prevented from sitting because he has "given his opinion ... on any question in controversy in the pending action in the course of previous proceedings therein." R. 1:12-1; N.J.S.A. 2A:15-49. In light of those principles, we are satisfied that the trial judge did not abuse the discretion entrusted to him in denying the motion for recusal. Cf. Waltz v. Waltz, 16 N.J. Super. 119 (App.Div. 1951).

IV
Philips challenges the trial judge's finding of compensatory damages of $199,506.50, which was trebled pursuant to N.J.S.A. 56:8-19.
*359 Schuster undertook to prove, and the judge determined, damages according to the "out-of-pocket" rule, which allows recovery for the difference between the price paid and the actual value of the property acquired. Correa v. Maggiore, 196 N.J. Super. 273, 284 (App.Div. 1984). The rule also permits the injured party to recover damages that naturally and proximately result from the actionable conduct. See, e.g., Acme Finishing Co. v. Robertson Brothers, Inc., 240 F. Supp. 1008 (D.N.J. 1964), aff'd 343 F.2d 801 (3 Cir.1965). Applying those standards, the trial judge awarded Schuster the full cost of the peripherals purchased in 1976 ($32,429), the monies subsequently paid by Schuster for software and programming for the peripherals ($50,829.50) and the costs of "the services of [Schuster's] employees lost in programming and attending the computer" from 1977 to 1980 ($116,248).
Philips contends, and we agree, that this computation is unrealistic and magnifies the actual loss sustained by Schuster. First, the computation fails to ascribe any value whatever to the peripherals or the associated software and programming, notwithstanding that Schuster used them before and continued to use them long after it was aware of their asserted obsolescence. Second, the damage award imposes upon Philips the costs of Schuster employee time accruing after Schuster learned of the asserted fraud. Since Schuster utilized the peripherals and their associated software and programming both before and long after the asserted fraud was disclosed, it is illogical and unfair to conclude that all of the expenditures on the computer system from and after 1976 were of no value whatsoever to Schuster.
The trial judge found the computer, the peripherals and the software and programming were essentially without value to Schuster by the end of 1980, as of which time he fixed damages. But Schuster used the peripherals and related items for approximately eight years, i.e., from 1977 through 1984, although at the end of 1978 Schuster became aware of their *360 obsolescence and stopped making lease payments to Hundred East Credit Corporation. Under those circumstances we find unavoidable the conclusion that some portion of the cost of the peripherals and related items represented value and benefit to Schuster. Those items at best had a limited life span; Schuster's claim was that they became prematurely obsolescent. Since Schuster's eight years of use surely represents at least one-third of any reasonably projected useful life of the peripherals and related items, we find it reasonable to infer that Schuster benefited to the extent of at least one-third of the cost of those items. Thus we conclude that Schuster's loss in the purchase of the peripherals, software and programming is to be fixed at $55,506 rather than $83,731 as found by the trial judge. Cf. Chatlos Systems v. National Cash Register Corp., 635 F.2d 1081, 1088 (3 Cir.1980), aff'd 670 F.2d 1304 (1982), cert. dis. sub nom. National Cash Register Corp. v. Chatlos Systems Inc., 457 U.S. 1112, 102 S.Ct. 2918, 73 L.Ed.2d 1323 (1982).
Since Schuster had recognized by the end of 1978 that its equipment was obsolete, we are also satisfied that Schuster cannot properly impose on Philips the post-1978 employee time spent on computer operations. Schuster's continued use of the equipment after it was known to be obsolete surely implies that the continued expenditures were economically useful; if they were not, then Schuster ought not to have made them and cannot rightly pass them on to Philips. Prorating the trial judge's $116,248 award for employee time between 1977 and 1980, we conclude that Schuster is entitled to recover only $58,124 representing wasted employee time through 1978.
Accordingly we find compensatory damages of $113,630 and reduce the treble damage award entered pursuant to N.J.S.A. 56:8-19 to $340,890.

V
We also find, as Philips contends, that the trial judge's award of counsel fees is flawed. An award of counsel fees is mandated *361 if a private party establishes, in an action brought under the Act, that he has been injured by an unlawful practice. N.J.S.A. 56:8-19; Skeer, supra, 187 N.J. Super. at 470. The award here, however, includes fees for services other than those incurred in prosecuting the cause of action under the Act.
The trial judge awarded Schuster's attorneys all of its hourly fees from October 22, 1979, a total of $149,479.75. But in its initial third party complaint, filed on November 28, 1979, Schuster asserted no cause of action under the Act; its claims against Philips were then framed solely as breaches of express and implied warranties. As we set forth in our earlier opinion, "[i]t was not until the eighth day of trial, just after and in response to the disclosure that manufacture of the P-350 computer line ended in 1976, that Schuster moved to amend its pleadings to assert a cause of action under the Consumer Fraud Act (N.J.S.A. 56:8-1 et seq.) `and alternatively to plead common law fraud as an additional cause of action, both legal and equitable.'"
At least until the eighth day of the initial trial, then, there was no pending claim under the Act to support the award of counsel fees under N.J.S.A. 56:8-19. The trial judge erred in awarding counsel fees for services rendered prior to that time. It also appears that some portion of the fee award represents compensation for services rendered on appeal to defend the original common law fraud judgment and to reinstate the claims for breach of warranty; on the record before us, we cannot determine whether any of those services are properly compensable under the Act. We therefore must vacate the counsel fee award and remand the matter to the trial judge to determine with particularity which legal services performed for Schuster are chargeable to Philips under N.J.S.A. 56:8-19. See Girandola v. Borough of Allentown, 208 N.J. Super. 437 (App. Div. 1986); Westfield Centre Service, Inc. v. Cities Service Oil Co., 172 N.J. Super. 196, 203-205 (App.Div. 1980), aff'd and remanded, 86 N.J. 453 (1981).

*362 VI
For the reasons expressed above, we (1) reduce the compensatory damage amount recited in the March 7, 1985 judgment to $113,630, (2) reduce the treble damage award under N.J.S.A. 56:8-19 to $340,890 (3) vacate the award of counsel fees and (4) remand the matter to the trial judge for redetermination of counsel fees in keeping with this opinion. We do not retain jurisdiction.
NOTES
[1] At an earlier trial, Schuster had recovered judgment for common law fraud; it had also asserted claims for breach of warranty, which were dismissed, but had not pleaded any causes of action under the Act. On Philips' appeal, we reversed the fraud award and remanded the matter for further proceedings; we also directed that Schuster be given leave to assert "any claims it advances under the Consumer Fraud Act." In his letter opinion issued at the conclusion of the remand proceedings, the trial judge incorporated by reference the findings and conclusions which he had set forth in his letter opinion following the initial trial.