**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3484-19

JEREMY JEDYNAK, in
his official capacity as
council member of the
Township of Rockaway,

     Plaintiff-Respondent,

v.

GOVERNING BODY OF
THE TOWNSHIP OF
ROCKAWAY,

     Defendant.

_____

JOHN SCHMIDT and
MARY HOLLENBECK,

     Plaintiffs-Appellants,

v.

ROCKAWAY TOWNSHIP
COUNCIL,

     Defendant-Respondent.

_____

TUCKER M. KELLEY,

 Plaintiff-Appellant,

v.

ROCKAWAY TOWNSHIP
COUNCIL,

 Defendant-Respondent.
_____

   Submitted February 28, 2022 – Decided March 23, 2022

   Before Judges Vernoia and Firko.

   On appeal from the Superior Court of New Jersey, Law
   Division, Morris County, Docket Nos. L-2112-19,
   C-0099-19, and C-0100-19.

   Mary Hollenbeck, John P. Schmidt, and Tucker M.
   Kelley, appellants pro se.

   Maraziti Falcon, LLP, attorneys for respondent
   Rockaway Township Council (Andrew M. Brewer, on
   the brief).

PER CURIAM

 Pro se plaintiffs John Schmidt, Mary Hollenbeck, and Tucker M. Kelley appeal from a December 11, 2019 order denying their motion for recusal of Assignment Judge Stuart A. Minkowitz; a December 24, 2019 order denying their request that Douglas Brookes be removed as a Councilmember of the

A-3484-19

Rockaway Township Council (the Council); and a February 20, 2020 order denying their motion for reconsideration of the December 24, 2019 order. We affirm all orders under review.

I.

The following facts are derived from the record. On November 7, 2017, Phyllis Smith, a Republican, was elected to serve a four-year term on the Council beginning January 1, 2018, and ending December 31, 2021. On September 9, 2019, Councilmember Smith resigned her seat, effective immediately. Her resignation created a vacancy on the Council and triggered the provisions of the Municipal Vacancy Law (MVL),[1] which provides the procedure for filling a vacant seat on a township council when the vacancy was caused by an incumbent elected as a member of a political party:

> If the incumbent whose office has become vacant was elected to office as the nominee of a political party, the municipal committee of the political party of which the incumbent was the nominee shall, no later than [fifteen] days after the occurrence of the vacancy, present to the governing body the names of three nominees for the selection of a successor to fill the vacancy. The governing body shall, within [thirty] days after the occurrence of the vacancy, appoint one of the nominees as the successor to fill the vacancy. If the governing body fails to appoint one of the nominees within the time prescribed herein, the municipal committee that

---
[1] N.J.S.A. 40A:16-1 to -23.

named the three nominees shall, within the next [fifteen] days, appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately. If the municipal committee which nominated the incumbent fails to submit the names of the nominees within the time prescribed herein, the governing body may, within the next [fifteen] days, fill the vacancy by the appointment of a successor from the same political party which had nominated the incumbent whose office has become vacant.

[N.J.S.A. 40A:16-11.]

The Rockaway Township Republican Committee (RTRC) encountered difficulties identifying three individuals willing to replace Smith. Despite the RTRC's best attempts, only one person was willing to serve—Brookes. At a meeting held on September 19, 2019, to address the vacancy left by former Councilmember Smith's resignation, the RTRC chairperson signed a "Notice of Nomination to Fill Vacancy and Acceptance by Candidate" containing only Brookes's name.

Prior to its September 24, 2019 meeting, the Council received a letter from the RTRC's attorney stating the RTRC was waiving any additional time it had to fill the vacancy under the MVL, and that the RTRC did not object to the Council considering additional candidates to fill the vacancy. At the September 24, 2019 meeting, council members were asked if there were any names they

wished to nominate.  When no additional names were provided, Brookes was appointed to Smith's former position as a member of the Council by acclamation.

On October 15, 2019, Kelley filed a complaint and order to show cause in the Law Division.  As a member of the Council, Kelley alleged that the Township of Rockaway violated the MVL by allowing the RTRC to waive its time to search for replacement nominees for the remainder of the statutorily prescribed fifteen-day period.  On November 13, 2019, pursuant to Rule 4:38-1(a),[2] Judge Minkowitz sua sponte consolidated Kelley's complaint with complaints filed in the Law Division by Schmidt, Hollenbeck, and a separate complaint filed by plaintiff Jeremy Jedynak.

In his complaint, Jedynak, a former elected member of the Council, challenged his removal from office.  Schmidt and Hollenbeck contended the meeting addressing Jedynak's removal violated the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-12(a), and they sought to invalidate certain actions taken by the Council in Jedynak's absence.  The judge found the three complaints

---

[2] Rule 4:38-1 provides for "Consolidation."  Subsection (a) addresses "Actions in the Superior Court."  It states:  "When actions involving a common question of law or fact arising out of the same transaction or series of transactions are pending in the Superior Court, the court on a party's or its own motion may order the actions consolidated."

all alleged a common set of facts and raised the same legal issues, warranting resolution in one action.

On November 26, 2019, plaintiffs filed a motion for Judge Minkowitz's disqualification under Rule 1:12-2. Plaintiffs alleged that in previous matters held before the judge, he demonstrated bias against them. The allegations were based on a series of comments made on the record by Judge Minkowitz, as well as what plaintiffs claimed was a pattern of ostensibly granting favorable extensions to the Township of Rockaway.

On December 11, 2019, the judge first conducted oral argument relative to the motion for his disqualification. After hearing arguments, Judge Minkowitz rendered an oral opinion denying the motion. The judge found plaintiffs did not demonstrate he was biased, and he noted his obligation to remain "neutral" in the proceedings. The judge then went on to hear oral arguments on the merits of the complaints and reserved decision.

On December 24, 2019, Judge Minkowitz entered a judgment accompanied by a written statement of reasons. The judge denied the relief sought by Kelley and found Brookes's appointment to the Council was valid under the MVL. Specifically, Judge Minkowitz stated:

> [T]he RTRC effectively waived its fifteen (15) day period once it realized it could not find three (3)

qualified nominees, in keeping with the MVL's goal of filling municipal vacancies in a timely manner. By deferring to the Council's judgment to select a nominee, the first fifteen (15) day period terminated early. The RTRC then provided notice to the Council in the form of a September 24, 2019 letter, which indicated that the RTRC was only able to present one name, and effectively waived any additional time that the RTRC may have had to present two (2) additional names. [(Citation omitted).] In keeping with the legislative intent of the MVL to fill vacancies as quickly as possible, without constraining the ability of the municipal committee or the governing body to act, the next fifteen (15) day period for the Council to appoint a new member properly began once the RTRC deferred to the Council. Since the Municipal Committee elected not to exercise its rights under the MVL, the second fifteen (15) day period began and the Council was within its discretion to appoint Brookes to replace Smith.

On February 20, 2020, the judge denied Kelley's motion for reconsideration and denied the Council's cross-motion seeking sanctions and attorney's fees. This appeal ensued.

On appeal, plaintiffs argue Judge Minkowitz erred by: (1) not recusing himself under the Rules of Court and Code of Judicial Cannons; and (2) carving out an exception allowing the Council to appoint a successor within fifteen days after Smith resigned, without three nominees being submitted, in violation of the MVL.

 A-3484-19

## II.

As an initial matter, the Council argues we lack jurisdiction because plaintiffs have not appealed from the final outcome of the underlying action, but rather, they only seek review of the judge's order denying their motion to recuse. Citing Rule 2:5-6, which governs "Appeals from Interlocutory Orders, Decisions and Actions," the Council asserts plaintiffs' appeal must be denied for failing to follow the appellate process.

Rule 2:5-6(a) provides "[a]pplications for leave to appeal from interlocutory orders of courts or of judges sitting as statutory agents and from interlocutory decisions or actions of state administrative agencies or officers shall be made . . . within [twenty] days after the date of service of such an order." In support of its argument, the Council cites Magill v. Casel, 238 N.J. Super. 57 (App. Div. 1990), where we held "[a] party may not seek appellate review of an adverse interlocutory order without seeking relief from the outcome of the litigation as embodied in the judgment." Id. at 62. The appeal in Magill was dismissed because plaintiff appealed a judge's decision not to recuse but not the underlying judgment. Ibid.

Neither Rule 2:5-6 nor Magill control here. In addition to the denial of their recusal motion, plaintiffs also appeal from the judgment denying Kelley's

relief to unseat Brookes. The judgment is a final decision, as is the subsequent order denying reconsideration of the judgment. We reject the Council's argument and conclude plaintiffs' appeal seeks review of final judicial determinations. Therefore, plaintiffs' appeal is not interlocutory.

## III.

Turning to the merits of plaintiffs' appeal, generally, recusal motions are "entrusted to the sound discretion of the judge and are subject to review for abuse of discretion." State v. McCabe, 201 N.J. 34, 45 (2010). We review de novo whether the judge applied the proper legal standard. Ibid. Judges must act in a way "that promotes public confidence in the independence, integrity and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Code of Judicial Conduct R. 2.1; see also In re Reddin, 221 N.J. 221, 227 (2015).

To determine if an appearance of impropriety exists, we ask "[w]ould a reasonable, fully informed person have doubts about the judge's impartiality?" DeNike v. Cupo, 196 N.J. 502, 517 (2008); see also Code of Judicial Conduct R. 2.1 cmt. 3. Judges must recuse themselves from "proceedings in which their impartiality or the appearance of their impartiality might reasonably be questioned," Code of Judicial Conduct R. 3.17(B), or if "there is any other

reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so," R. 1:12-1(g).

Withdrawing from a case "upon a mere suggestion" of disqualification is improper. Panitch v. Panitch, 339 N.J. Super. 63, 66-67 (App. Div. 2001). A judge should not step aside from a case "unless the alleged cause of recusal is known by him to exist or is shown to be true in fact." Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986); see also Laird v. Tatum, 409 U.S. 824, 837 (1972) (holding a judge's "duty to sit where not disqualified . . . is equally as strong as the duty to not sit where disqualified") (emphases added); State v. Marshall, 148 N.J. 89, 276 (1997) ("[J]udges are not free to err on the side of caution; it is improper for a court to recuse itself unless the factual bases for its disqualification are shown by the movant to be true or are already known by the court.").

To hold otherwise would create an incentive for disgruntled litigants to claim bias in order to remove a judge from a case who has ruled against them. That a judge rendered decisions in a case that did not favor the party seeking recusal—even a decision we reversed on appeal—is insufficient grounds for recusal. Marshall, 148 N.J. at 276; Hundred E. Credit Corp., 212 N.J. Super. at 358. A judge is not prevented from sitting by giving an "opinion on any question

10

in controversy in the pending action in the course of previous proceedings therein." N.J.S.A. 2A:15-49; see also R. 1:12-1 (stating same).

Rule 1:12-2 states that a party may file a motion seeking a judge's disqualification. This can also be done upon the court's own motion when there is any "reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g). A judge's participation in prior proceedings in a case is not, on its own, sufficient grounds for disqualification. Matthews v. Deane, 196 N.J. Super. 441, 445 (Ch. Div. 1984) (citing State v. Walker, 33 N.J. 580, 591 (1960)).

It is crucial for the moving party to demonstrate "prejudice or potential bias" in order to succeed on a motion for judicial qualification. State v. Flowers, 109 N.J. Super. 309, 312 (App. Div. 1970). The mere suggestion of bias is insufficient to support a Rule 1:12-2 motion—the cause of disqualification must be known to be true to the judge or demonstrated to be true in fact. Hundred E. Credit Corp., 212 N.J. Super. at 358.

In support of their claim that Judge Minkowitz exhibited bias against them, plaintiffs cite to three remarks from cases previously litigated before the judge. First, plaintiffs take issue with a remark made in a written opinion denying a motion for reconsideration in an Open Public Records Act action.

According to plaintiffs, Judge Minkowitz looked unfavorably at Schmidt's body language during a plenary hearing, noting his face turned red when questioned, and that he could not maintain eye contact. For this and other reasons, the judge found Schmidt was not a "credible witness." Second, during oral arguments in an OPMA matter, plaintiffs allege that Judge Minkowitz threatened Schmidt with "contempt of court." Though plaintiffs did not provide a transcript of the remark,[3] Judge Minkowitz disputed plaintiffs' version of events at a motion hearing in the matter under review:

> I don't think I said you had committed contempt, I never found you in contempt, but I – I think I said, again, you did not provide transcript to support your argument, but I think I said that if you continued down this road it could be deemed as contemptuous conduct.
>
> I think that's what I said as you were making statements, ad hominem attacks against an attorney in open court on this record that were irrelevant to the proceedings.

Third, plaintiffs claim that at the same OPMA case oral argument, Judge Minkowitz told Hollenbeck that "she should consult an attorney or research it." Plaintiffs assert this "inappropriate quip" "implied that [she] was [sic] non-

---

[3] Rule 2:6-1(a)(1)(I) provides that required contents of appellant's appendix shall contain "such other parts of the record . . . as are essential to the proper consideration of the issues."

intelligent."  Again, no transcript containing this statement or further information about the context in which it was made was provided in this record in violation of Rule 2:6-1(a)(1)(I).

We see no abuse of discretion or misapplication of the law in Judge Minkowitz's denial of the recusal motion.  The judge found Schmidt's testimony was "incredible."  And, citing plaintiffs for using "contemptuous" language does not suffice to justify recusal.  A reasonable, fully informed person would have no doubts about the judge's impartiality.  See DeNike, 196 N.J. at 517.  Plaintiffs' arguments on recusal are premised on their disagreements with the decisions rendered by the judge as to the interpretation of the MVL.

Moreover, the record is devoid of any indication those decisions were the product of bias or unfair treatment, and the judge correctly found there was no actual prejudice, or appearance of prejudice on the part of the court.  Plaintiffs' disagreements with the judge's decisions are not a sufficient basis for recusal under Rule 1:12-2.  Therefore, we affirm the denial of the recusal motion.

IV.

We are also unpersuaded by plaintiffs' argument that Judge Minkowitz misinterpreted the MVL.  "Municipal action will be overturned by a court if it is arbitrary, capricious or unreasonable."  Bryant v. City of Atl. City, 309 N.J.

A-3484-19

Super. 596, 610 (App. Div. 1998). While a trial court's factual determinations should be accorded broad deference, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Contrary to plaintiffs' contention, the applicable statute—N.J.S.A. 40A:16-1 to -23—does not require the Council to wait the full fifteen days allotted to the local political committee, here the RTRC, where the committee nominates only one person as the replacement member and states it cannot find, and will not submit, any additional names for consideration.

In Brubaker v. Borough of Ship Bottom, the trial court engrafted a judicial exception on the above statutory language to

> address those situations in which it is alleged that three nominees cannot be found. . . . could mire the court in interminable hearings to verify that each and every member of the incumbent's political party honestly has declined the invitation to serve. The proceedings alone, not to mention the requisite pretrial discovery, could carry on beyond the next general election at which the vacancy could be filled.
>
> [246 N.J. Super. 55, 60-61 (Law Div. 1990).]

Judge Minkowitz's interpretation of the MVL aligns with the Brubaker holding and the plain meaning of the statute. Therefore, plaintiffs' challenge to

14

the judge's decision lacks merit.  We find insufficient merit in plaintiffs' remaining arguments to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3484-19