# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3026-23

L.P.,[1]

    Plaintiff-Respondent,

v.

A.R.,

    Defendant-Appellant.

_____

Submitted December 11, 2025 – Decided December 24, 2025

Before Judges Mawla and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FD-04-2413-19.

Patricia A. Darden, attorney for appellant.

Cynthia D. Sora, attorney for respondent.

PER CURIAM

_____

[1] We use initials pursuant to Rule 1:38-3(d)(13).

Defendant A.R. appeals from non-dissolution orders dated January 29, February 21, and April 19, 2024, arising from a parenting time dispute with plaintiff L.P. We affirm.

The parties have a lengthy litigation history, which began when plaintiff filed a non-dissolution complaint in 2019 for joint legal custody and parenting time with the parties' then three-year-old daughter. Defendant responded with a counterclaim describing the parties' relationship as difficult and claiming plaintiff had not seen their daughter on a regular basis. She also requested, among other things, the court conduct an in-camera review of Pennsylvania Department of Human Services (DHS) files and criminal records regarding child endangerment and physical abuse of plaintiff's son from another relationship, who was born in 2001. Further, defendant requested the court order a drug test. Her allegations of abuse would color much of the court proceedings.

A judge conducted a five-day plenary hearing and rendered a decision on August 25, 2020. This order would be the first of many orders entered by the six judges to hear this matter. The judge granted defendant sole legal and physical custody and ordered plaintiff would not exercise parenting time until he completed twelve in-person co-parenting classes with defendant. Plaintiff received telephonic parenting time with the parties' child.

2

Plaintiff filed a motion for custody and to remove the child to Pennsylvania. On December 2, 2020, a second judge, who we will refer to as the trial judge because it is his orders defendant now appeals from, denied the motion noting there was no change in circumstances and plaintiff was not entitled to parenting time until he completed the co-parenting counseling sessions.

On April 26, 2021, a third judge issued an order denying competing motions filed by the parties for various relief. Notably, the order modified the required co-parenting sessions to individual sessions for plaintiff. On July 6, 2021, the matter returned before the trial judge who "vacated" defendant's request to suspend plaintiff's parenting time and reinstated visitation. Defendant was ordered to participate and cooperate in co-parenting classes again.

On October 25, 2021, a fourth judge denied plaintiff's order to show cause for custody and visitation, and ruled plaintiff must submit proof he completed the court-ordered parenting classes. Plaintiff was having visitation by video and this order continued it. The judge appointed a custody evaluator to conduct a best interests evaluation. On February 8, 2022, the judge increased plaintiff's visitation to six supervised visits until she received the evaluation and ordered a custody trial. On April 13, 2022, the judge ordered unsupervised parenting

3

time, curbside pick-up, and no contact between the parties during the parenting time exchange.

Following the custody trial, the judge found no change in circumstances to modify custody. On August 16, 2022, she entered an order maintaining plaintiff's parenting time under the April 2022 order and ordered him to have intensive therapy to better co-parent with defendant.

Defendant filed an order to show cause to suspend parenting time on August 29, 2022. She claimed plaintiff was not complying with the pick-up and drop-off procedures. Plaintiff cross-moved to change the parenting time exchange location. He pointed out he had completed the court-ordered therapy and asked the court for overnight parenting time. Defendant's reply disputed these assertions.

On December 5, 2022, a fifth judge entered an order requiring both parties to appear in court and modified the parenting-time exchange location to a police station on an interim basis. On December 23, 2022, the judge denied defendant's request to suspend parenting time, returned the parenting-time exchange to its original location, and ordered plaintiff not to exit his vehicle during exchanges.

On March 1, 2023, a therapist wrote to the court explaining plaintiff was attending his court-ordered sessions. The matter returned to court on July 14,

4

2023. A sixth judge heard the case on this date and entered an order directing the parties to download an application to communicate regarding their daughter. Plaintiff received increased parenting time. However, the judge ordered there would be no parenting time in Pennsylvania. The judge ordered continued therapy and denied defendant's request for the DHS records.

Defendant moved for reconsideration and sought further relief. On September 22, 2023, the judge modified the July order to state plaintiff could not take the child outside of New Jersey. On October 16, 2023, defendant's attorney wrote to the court, claiming plaintiff violated its order and took the child to Philadelphia. As proof, counsel provided a recording of a telephone call placed by the child to defendant and the geolocation of an AirTag defendant had affixed to the child's shoe, allegedly showing she was in Philadelphia. Plaintiff disputed this claim and argued the child's sneakers were left in his car and he did not take the child outside of New Jersey. This alleged violation of the prohibition on parenting time outside of New Jersey—and proving the violation—would become the major issue for defendant at trial.

Defendant later formally moved for relief related to the alleged violation and sought sanctions against plaintiff. The motion was returnable before the

A-3026-23

trial judge on October 23, 2023. After a lengthy argument, which we address more fully below, the judge rescheduled the matter for December 1, 2023.

The parties returned to court for trial on December 1, 2023. However, before the trial began, plaintiff's counsel noted her client had not seen the child since October because defendant was wrongfully withholding her. The parties also addressed defendant's assertion plaintiff violated the court's order by taking the child out of state. Defendant's counsel reiterated her claim the proof of the violation was in the child's phone records, argued she could prove the violation using her client's phone records, and requested the court interview the child. The judge reiterated he wanted to start the trial to resolve these issues and urged defendant to call her first witness. Defense counsel continued to argue for the judge to interview the child, noting the Division of Child Protection and Permanency (Division) had interviewed her as part of a referral and investigation. The judge denied the request without prejudice pending his review of the Division's file.

Plaintiff's counsel also wished to address a motion for sanctions filed against her by defendant. However, the judge emphasized time was running out to begin the trial. Defendant then called her goddaughter who testified she

6

tracked the child's phone to Philadelphia using her phone on a separate occasion than the sneaker tracking incident.

After the goddaughter's testimony, the judge addressed when the matter would return because it was the end of the court day. Plaintiff's counsel asked the judge to address parenting time. Defendant's counsel resisted the request, noting the Division had interviewed the child who stated plaintiff had taken her to Philadelphia and left her alone, and she became afraid, so she called defendant. Because plaintiff maintained the child's cellphone on his mobile account, defendant's counsel requested the court order the cellphone carrier to produce its records to show the child called defendant the day she was in Philadelphia.

The trial judge declined, noting if plaintiff was untruthful about taking the child to Philadelphia, it should not result in punishing the child by limiting plaintiff's time with her. Defendant's counsel disputed the judge's comment and continued to argue this was an important issue. The judge denied the request for an order directing the carrier to produce its records. Defense counsel continued to argue about plaintiff's violation and the judge responded that if defendant proved the violation, he would monetarily sanction plaintiff. However, he would not sanction plaintiff by depriving him of parenting time.

A-3026-23

Defense counsel asked the judge to place his ruling on the record that he would not interview the child, despite his "obligation to protect . . . her best interests." The judge explained he would not be interviewing the child because "it's evident . . . the parties are working hard to influence the child." At seven years of age, she lacked the capacity to withstand an interview.

Both attorneys continued to argue the merits of various issues with the judge. The judge ruled the hearing was over and the parties would be left to their proofs at trial. However, he reiterated his concern defendant was trying to prevent plaintiff from having parenting time and it was not in the child's best interests to punish plaintiff for violating the court's order by limiting parenting time.

On December 19, 2023, the trial judge entered an order memorializing his rulings about the child's cellphone records and the interview. The judge ruled the child could not travel to Philadelphia, but granted plaintiff parenting time, and rescheduled the trial.

The parties filed dueling motions. Plaintiff claimed defendant was denying him parenting time, and defendant sought a modification of his parenting time. The trial judge would hear these motions. Beforehand, plaintiff

A-3026-23

filed an order to show cause to enforce parenting time, which the trial judge also granted on January 29, 2024.

On February 21, 2024, the trial judge entered an order denying defendant's request to suspend parenting time and her request to subpoena the daughter's phone records. The judge continued plaintiff's parenting time and ordered additional parenting time by way of video. Defendant moved for a stay pending appeal, which was denied.

The parties appeared for trial on April 10, 2024. The trial judge noted that the day before, defendant filed a motion to recuse him. He declined to adjudicate the motion because neither he nor plaintiff's attorney had the opportunity to prepare for the motion. Therefore, the motion would be rescheduled. Even though the judge reminded counsel the day was reserved for the trial, defendant's counsel insisted on proceeding with the recusal motion and argued with him about his ruling, talked over him, and ignored his entreaties to stop. Ultimately, the judge made clear he would not hear the recusal motion at that instant and would not adjourn trial on account of the motion. Both parties testified at trial and plaintiff adduced ten exhibits into evidence.

On April 11, 2024, the trial judge ordered the matter to return approximately a week later to decide the recusal motion and the issues presented

A-3026-23

during the trial. Pending the return, the judge enforced plaintiff's parenting time under the July 14, 2023 order. The order also stated plaintiff could seek help from police if defendant did not comply with parenting time.

The trial judge made oral findings on the recusal motion and issues raised during the trial on April 17, 2024. Regarding the recusal, the judge noted he received the motion the morning of the plenary hearing and declined to adjudicate it then because the parties had at least two months' notice of the hearing, and the motion could have been filed during that time. He was also uncertain if plaintiff's counsel received the motion.

The judge observed the parties' case was difficult and marked by two prior plenary hearings and numerous orders, which he had reviewed. He found the defense made efforts to stop the plenary hearing by seeking his recusal and filing an emergent appeal over the issue, which was denied. The judge concluded there was no basis to grant the recusal under Rule 1:12-1 or the Code of Judicial Conduct.

As for the best interests aspect of the trial, the judge found the issue was not as defendant presented it; namely, "[w]hether . . . the child was taken to Philadelphia against [c]ourt [o]rders, . . . [and] if that's established definitively[,] that there is . . . some . . . fatal consequence as to [plaintiff]'s rights as a

biological parent of the child." The judge noted defendant's allegations against plaintiff that he had a criminal history, had abused his other child, and used drugs were nothing new because she made these allegations throughout the five years of litigation and during both prior plenary hearings.

According to the trial judge, the central issue was defendant's violation of court-ordered parenting time. It was "clear in her testimony . . . she does not want [plaintiff] to have any contact with the child and . . . is unilaterally terminating the parental rights of" plaintiff. The judge found defendant had not proven plaintiff violated the prohibition on taking the child out of state based on the evidence she presented concerning the AirTag she planted. Plaintiff testified "what actually happened was the child's sneakers were in the car[,] and his son took the car and went to [plaintiff's home in] Philadelphia." The judge concluded defendant's aim was to "get a [gotcha] moment in something that she could bring back to court and argue that this would be a reason that the father should not be permitted to see the child." This was defendant's "single . . . mantra" during her testimony.

Along these lines, the trial judge accepted defendant's testimony the child called from plaintiff's home in Philadelphia. However, the testimony showed defendant's interest was less about the child's safety and more about "getting

11

proof that [plaintiff] had taken the child to Philadelphia [because n]o law enforcement was called, no effort was undertaken by [defendant] in this rather . . . scary situation [where] the child called . . . and claimed that she was alone."

The judge reviewed the history of the litigation and listened to the audio recordings of prior court proceedings. He found the prior court orders intended plaintiff to have contact with the child and "both parents have quality time with the child." Instead, the judge discerned a clear pattern, which was less about plaintiff's ability to parent and more about defendant's intent to prevent him from parenting.

The trial judge declined to modify custody but concluded there was a change in circumstances warranting a modification and expansion of plaintiff's parenting time because defendant "weaponized" the means the court previously implemented to afford plaintiff parenting time. In addition to plaintiff's weeknight of parenting time, the judge also ordered he would have one overnight every other weekend at his home. The judge vacated the limitation on taking the child to Philadelphia. He concluded this was the "only way . . . [plaintiff]

A-3026-23

would get quality time" with the child. The judge also noted the Division had no safety concerns.[2]

Given the pattern of defendant's conduct of ignoring court orders, the judge expressly directed her to permit parenting time and ordered law enforcement to assist in enforcement if she failed to comply. The judge ordered parenting time would be expanded if defendant failed to comply with his order. He also directed his order be given to the Camden County Prosecutor, which was investigating defendant's interference with plaintiff's parenting time. The judge entered an order memorializing his rulings on April 19, 2024.

## I.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Gnall v. Gnall, 222 N.J. 414, 428 (2015)

---

[2] On January 4, 2024, the Division closed its investigation for neglect against both parties after concluding the allegations referred to it were unfounded.

(quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

A judge "shall be disqualified on the court's own motion and shall not sit in any matter" when, among other things, "there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g). "It is unnecessary to prove actual prejudice on the part of the court, but rather 'the mere appearance of bias may require disqualification'" if the belief of unfairness is "objectively reasonable." Panitch v. Panitch, 339 N.J. Super. 63, 67 (App. Div. 2001) (quoting State v. Marshall, 148 N.J. 89, 279 (1997)).

However, a judge is not required to "withdraw from a case upon a mere suggestion that [they are] disqualified 'unless the alleged cause of recusal is known by [them] to exist or is shown to be true in fact.'" Id. at 66-67 (quoting Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986)). The decision to recuse is "entrusted to the 'sound discretion' of the trial judge whose recusal is sought." Id. at 66 (quoting Magill v. Casel, 238 N.J. Super. 57, 63 (App. Div. 1990)).

II.

Defendant raises the following point on appeal:

THE JUDGE'S COMMENTARY, TEMPERAMENT, AND DEMEANOR, AS WELL AS HIS APPLICATION OF INCORRECT LEGAL STANDARD[]S DEPRIVED [DEFENDANT] OF AN IMPARTIAL AND FAIR ADJUDICATION OF HER CLAIMS.

In support of her argument, defendant points us to the October 23, 2023 appearance before the trial judge, in which she claims, "[t]he [c]ourt was hasty, critical and aggressive with [defendant,] which contrasted with the [c]ourt's sympathetic and empathetic demeanor towards plaintiff's counsel." She asserts the judge demonstrated bias by not adjudicating a dispute in fact; namely, "whether or not the child was left alone and frightened in Pennsylvania."

At the outset, we note the October 2023 hearing did not result in the entry of an order. Even if it did, defendant's notice of appeal does not designate the October hearing as an event she is contesting on appeal. It is "only the judgments, orders[,] or parts thereof designated in the notice of appeal [which] are subject to the appeal process and review." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1(f)(1) (2025).

Notwithstanding the fact the October 2023 proceeding is not before us on appeal, our review of the transcript of that proceeding does not support defendant's assertions the trial judge favored plaintiff over defendant and was hasty. The transcript shows the judge permitted defendant's counsel the lion's

share of the argument. She recounted the entire history of the case at length and articulated her client's claims against plaintiff with little or no interruption. Indeed, measured by the number of transcript pages alone, defendant argued her cause for approximately twenty-seven pages whereas plaintiff's argument spanned approximately sixteen pages.

The trial judge concluded the hearing without making a decision because he ran out of time and ordered the matter to be relisted—not out of haste or favoritism. Moreover, as a matter of law, a plenary hearing was necessary to adjudicate the issues presented in defendant's motion. See Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) ("A plenary hearing is required when the submissions show there is a genuine and substantial factual dispute regarding the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual dispute.").

Defendant next points us to the December 1, 2023 appearance as evidence of reversible error. She regurgitates portions of the transcript from that hearing, during which her attorney argued plaintiff should face consequences for allegedly taking the child out of state in violation of court orders, and recounts the judge's response that he did not view the alleged violation in a similar light.

Defendant claims the judge acted inappropriately when he refused to grant a stay pending appeal.

We are unconvinced the judge committed reversible error. As we recounted, the issue of defendant's alleged violation was a trial issue. Arguably, the judge would be pre-judging the issue if he granted defendant enforcement where there was a material dispute of fact.

Moreover, defendant was not prevented from seeking emergent appellate review. The record shows she filed separate motions for leave to appeal from the February 21, 2024 and April 11, 2024 orders. She also filed an emergent appellate application for a stay in April 2024. We denied the emergent application on the merits, in part, because defendant did not demonstrate irreparable harm. Thereafter, defendant withdrew the motions for leave to appeal.

Defendant argues we should stay or reverse all orders entered since December 1, 2023. Again, we are limited to addressing the orders set forth in her notice of appeal. Therefore, we do not address the December 19, 2023 order.

In regard to the three orders on appeal, we discern no misapplication of the facts or law warranting our intervention. Aside from a dissatisfaction with

the trial judges' rulings, defendant has not convinced us the denial of the recusal motion was an abuse of discretion.

Defendant's certification in support of her recusal motion purportedly set forth the reasons why the judge should recuse. Her certification pointed to the October 2023 hearing, which we have already stated was a fair proceeding. She also certified the December 1, 2023 hearing was another example of bias, but our review of the record of that proceeding simply does not support this conclusion.

Defendant also certified the court did not permit her attorney to speak, belittled her, and did not adjudicate her order to show cause when the parties appeared to argue it on January 29, 2024. Our review of the transcript from that appearance shows the opposite. Not only was defendant's attorney able to present her arguments, but she often talked over the judge in a confrontational manner. The judge repeatedly reminded defendant's counsel the issues raised in defendant's order to show cause, specifically regarding plaintiff's alleged violation, would be addressed at the plenary hearing; nevertheless, counsel continued to argue the court should decide the issue. Defendant's certification and her claims on appeal conflate the judge's exasperation over her attorney's behavior with bias.

A-3026-23

Finally, as the judge explained, it was implicit in his granting plaintiff's order to show cause to enforce parenting time that defendant's order to show cause to find plaintiff in violation of a parenting time order was denied. He did not need to make separate, formal findings as to why defendant's application was denied; it was evident.

In sum, the record bears no evidence of impartiality or bias. On the contrary, it shows the judge did his best to control rancorous hearings, lengthy and repetitive arguments by counsel, and disputation of his rulings by counsel. To the extent we have not addressed an argument raised on appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3026-23